In the Matter of the Claim of KAROL HINES, Respondent, v DIVERS WORLD ENTERPRISES, INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Mahoney, P. J.

Decedent was employed full time by the State Police as a Trooper when he injured his hands, chest and elbow in a compensable accident on December 25, 1984. Due to his injuries, decedent remained disabled from his work as a Trooper. However, decedent's injuries did not prevent him from working as a diver for Divers World Enterprises, Inc. (hereinafter Divers World), a business jointly owned by decedent and claimant, his wife. On October 4, 1985, while decedent was engaged in diving, he was washed over a dam and drowned.

At issue on this appeal is the propriety of the Workers' Compensation Board's computation of claimant's death bene-

fits. During the time that decedent was performing diving services for Divers World, he was concurrently employed by and drawing a salary from the State Police. It is conceded that while disabled from working as a Trooper, decedent was able to work as a diver and was paid weekly by Divers World, which sum he did not draw but left in the corporate account to the fiscal advantage of himself, his wife and their children. In its decision, the Board found that, although decedent did not actually collect wages from Divers World, he performed valuable services which benefited the corporate entity. The Board further found that the most reasonable way to compute the average weekly wage was to apply the daily wage rate for divers of $210 per day, resulting in an average weekly rate of $803.65.

Initially, we reject the contention of Divers World that the Board's decision is flawed since it acknowledged that decedent was never paid a weekly wage by Divers World, yet found an average weekly wage based on the fact that decedent's work produced profits for the company "which, in turn, benefited the family by increasing the value of the family business". This argument incorrectly equates wages earned with wages paid. The record is clear that decedent performed compensable services as a diver for Divers World and earned a salary which he chose to leave in the corporate treasury. Based on that fact, the Board was able to quantify the wages earned by decedent by applying the rate which Divers World would have paid to other divers for like services (see, Matter of Nannery v GAF Corp., 75 AD2d 697).

Next, while we concur in the position of Divers World that neither Workers' Compensation Law § 14 (1) nor (2) could be used to calculate decedent's average weekly wage, we reject their contention that section 14 (3) is likewise inapplicable. That section provides: "If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, *such annual average earnings shall be such sum* as, having regard to the previous earnings of the injured employee and of other employees * * * working in the same or most similar employment * * * *shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident,* provided, however, his average annual earnings shall consist of not less than two hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed" (emphasis supplied). Here, since it is clear that

decedent was employed by Divers World at the time of his death, the Board properly utilized Workers' Compensation Law § 14 (3). Further, evidence in the record established that the daily rate for divers is $210 per day, and using a 200 multiple, the Board calculated the average weekly wage at $803.65. Accordingly, since the Board's calculation of decedent's average weekly wage is in accordance with the statutory directive, it is supported by substantial evidence.

Lastly, the reliance of Divers World on *Matter of Kirsten v Camille Cleaners* (4 AD2d 900) is misplaced. The claimant in *Kirsten* was the president and sole stockholder of the corporate employer and, accordingly, came within the employer's coverage pursuant to Workers' Compensation Law § 54 (6), which provides for the estimation of wage values of executive officers. Here, however, the fatal accident occurred not while decedent was performing the duties of an executive officer, but while performing the work of a diver. Whatever value, if any, decedent had to the family corporation as an unsalaried executive played no part in the Board's decision. On this point, we note that this court in *Matter of Carlin v Eljo Elec. Co.* (48 AD2d 719), a case involving a husband-wife business in which the injured employee (the wife) performed services for the company but drew no wages, we held that the Board could properly determine the average weekly wage based upon the evidence before it and was not bound by the amount used by the carrier to compute the insurance premium. Similarly, in this matter, we conclude that the Board's determination that claimant was entitled to a weekly sum of $803.65 computed pursuant to the directive contained within Workers' Compensation Law § 14 (3) is supported by substantial evidence in the record.

The argument by Divers World that the finding of an average weekly wage in this case results in an overpayment in another case, the record of which is not before us, has no relevance to this matter.

Decision affirmed, with costs to the Workers' Compensation Board. Mahoney, P. J., Weiss, Levine, Mercure and Harvey, JJ., concur.